Next case is Nartron Corporation v. Schukra and Bohr-Indak, 2008, 1363. Mr. Angellari. Good morning. May it please the Court. Frank Angellari for the appellant, Nartron. This is an inventorship case that comes up on summary judgment, and I think the Court made two significant errors in analyzing the inventorship issue. The first was to focus on an element in isolation as opposed to the invention as a whole, and the second was to not undertake a meaningful analysis of the significance to that whole invention of that individual element. But it's a claim limitation. It is a claim limitation. A limitation is considered material, and the trial court said it's a critical element. A limitation is material, certainly, for example, in an infringement or invalidity analysis. The inventorship law requires a separate analysis, however, of the significance of that limitation in the context of the invention as a whole. If every limitation was— You're saying the genuine issue is a material fact? I think that there are clearly genuine issues of material fact on the significance of that element, especially in view of the testimony from Mr. Benson that it was a conventional prior art structure. Doesn't the fact that there was the exclusion of this limitation and its own dependent claim sort of in and of itself satisfy a significant standard? I don't think so. I think to a large extent the fact that it's only a dependent claim almost reinforces the insignificance of it in the sense that this invention was undeniably patentable regardless of that limitation. You mean Claim 1? Claim 1. But every claim has to be considered on its own merits. Claim 11 includes all the limitations of Claims 1, 5, and— And they chose to add a limitation to Claim 11 that seemingly all parties indicate came from Mr. Benson. And that's all that claim is about? That claim is about an exemplary use of this modular controller with one particular structure. The focus of the invention is to have a controller that you can insert into any existing seat structure and it'll work. Well, the theory, as I understand it, is not—is your position anyway, is that this did not come from Mr. Benson but it came from the prior art, that it was well-established to have extenders in these lumbar supports or whatever they're called, and that all they did was take a known feature of the prior art and stick it into Claim 11. Is that not your position? It's in the prior art because it's a conventional structure. It's also prior art to the— I'm sorry? What's wrong with what I said? It's what you said is correct, and I was going to add to it. Go ahead. What I was going to add to it was that if you look in the context of the Nartron inventors who are creating this controller, it's prior art even if it comes from Benson. Because Benson shows up—Benson is sort of a—and when I say that, he's sort of a summary of Benson and Shukra. But Shukra shows up and says, Nartron, Delphi wants this controller that we can plug in. You go create a controller for us. Well, to that extent, whatever structure that is shown to Nartron is prior art to them. They go and create the controller on top of that or after that. I think the chronology is actually significant in favor of us because Benson could not possibly have conceived of using our controller. I don't understand why you need to get to that. What your argument ought to be is that the patent on its face refers to the extender and these other things as being part of the prior art. And that's exactly true because—I agree. I don't know how you're going to rule, Judge, so I've made several arguments. I think that the patent on its face refers to the structures with which this controller can be used as prior art structures. The invention is the controller, so there's really nothing to talk about. Most components of a mechanical invention are from the prior art. Absolutely. And that which creates invention is you put together a non-obvious combination. Absolutely. The fact that it's in the prior art should not disqualify it. Should not disqualify it as being part of the invention or not. Part of the invention. And, in fact, in the patent, it indicates it in the preferred embodiment, doesn't it? It is— Of the core. Right. There's one paragraph—the preferred embodiment in the sense that there is one paragraph that talks about how you would use this controller. The entire rest of the patent talks about the controller itself. It's a preferred embodiment only in the sense that the inventors arguably were required to disclose at least one exemplary use of their new controller. The fact that they put this extender has little to do with, A, whether Benson conceived of the invention of Claim 11, and, B, whether the extender is significant to the invention of Claim 11. So what, in your view, you're saying that is your position—she granted—he granted summary judgment. Yes. Your position is that there is at least a factual dispute, and, therefore, what is the factual dispute? I think we should win as a matter of law because— But you didn't actually—your briefs never say that, do they? I mean, they never ask for that, right? What we ask for is reversal. And I guess that's arguably ambiguous, whether we're asking for summary judgment in our favor or a genuine issue. Was there a cross-motion for summary judgment? No. No. I think when there's a motion, the judge can grant summary judgment the other way, but there was no cross-motion. But with respect to Claim 11, Claim 11 covers the use of our controller with this extender. There is no evidence whatsoever that Mr. Benson ever had any conception of that invention. He couldn't have because he showed up and said, Nartron, create a controller for me, and they created the controller. He could not possibly have conceived of using Nartron's controller, which didn't exist, with his extender because the controller didn't exist at the time. Let me ask you, just before you run out of time, there's a footnote in here. I mean, there's all this other stuff that's pending, right? I mean, with respect to inventorship or joint inventorship at footnote 2 of the district court's opinion. Yes. So what's poised to happen? I mean, even if you were to prevail here on summary judgment, are there just other, well, a whole slew of other allegations that are waiting to jump in as soon as this is disposed of that are of the same nature? I don't know. I think that the district, there's two answers to that. The district court focuses on some other dependent claims and says, gee, and these, again, relate to physical structures. They're external to the invention, and says, well, the inventors admitted they didn't make those physical structures either, so somebody else should be an inventor here, too. We don't know who that is. I don't know whether they would run that argument again. I would assume that if the court held, as I believe it should, that you don't become an inventor just because of one of these external structures, then those dependent claims go away. There's also been some argument on appeal. There really was no argument at the trial level that actually our inventors didn't invent even Claim 1, that everything was known and this controller would. That was never seriously argued before. It was never found by the district court, and I don't think there's no support for that. There's no corroboration of any of that. There's no sufficient evidence to say that anyone other than the name inventors invented Claim 1. So I don't know whether Claim 1 would pop back up if this case were remanded. That's basically my position. Unless the court has any other questions, I'll sit down. No conception of Claim 11, and it's not significant because it is just one example structure. It's in the prior. It's a merely one example structure, and the whole point of the claim invention is to be used with any structure. It's a preferred embodiment, and it's a conventional structure. An analogy would be a remote control for a TV. Someone comes to me and says, I've got this great new plasma. Can you invent a remote for me? I say, sure. I invent a remote that can be used with any TV, and I say in a dependent claim, you can use this with a plasma TV. That doesn't make the owner of the plasma TV an inventor of my invention, even if I say it's a preferred embodiment. I might say it's a preferred embodiment because, hey, I think plasmas are the best TVs. It's not the invention. The invention is for use with any TV. In that example, it's for use with any lumbar support structure. It's not claim 11. But the invention of claim 1 is in claim 11. It's that controller. Claim 11 is the claim 1 controller used with an example structure. Joe Benson had no conception of that invention. We'll save your rebuttal time. Mr. Sadowski. Do you want to throw out this whole patent because of a later claim 11 that has a limitation that's in the prior op? Well, Your Honor, may it please the Court, Jeff Sadowski on behalf of Apple Lead. And Shukri USA is not part of this case. I don't know why they're in the caption, but they were dismissed and there was no appeal with respect to Shukri USA. Shukri North America, a totally different company, was the company that Nartron dealt with. Shukri USA, Joe Benson, chronologically developed this whole package as we submit it. And there came a point in time where the supplier of the controller, the controller that had an on-off switch and the timer and the speed switch and the return to position switch and all these things that were conceived of by Joe Benson back in 1994. They were conceived of by Benson. I mean, these things existed in the prior op. The patent says it on the face of it. The patent does not say that this was in existence in the prior op and there was no time that Nartron ever expressed to the patent office that this was prior op. So you're saying a lumbar support adjuster, including an extender, was not in the prior op? Well, it was in the prior op if you define prior op as there were certain embodiments of that that were in the prior op. That's correct. But not the massage function, not the massager, was not in the prior op. Well, that's the point. That's what the invention was, was the control that allowed you to have a massager. The extender itself was well known in the prior op. In fact, it was something that was used in multiple vehicles, right? But they're talking about... Answer the question. The... The extender was in the prior op, was it not? If you isolate the specific arm that extends out, that was in the prior op with respect to other lumbar supports. Okay, so the question is, in Claim 11, is the invention adding the specific type of controller to the hardware of the prior op, or is the invention, the use of the prior, the inventive concept is adding the prior op to this particular controller? I think with respect to Nartron's strategy, the answer is both, because Nartron tried to do it both ways. Nartron had tried to have, it had a strategy where it was trying to tie up supplying this product, and in the process of that included the Shukra Benson contributions in the patent. We refer to them as the Benson contributions, but you just agreed that it's in the prior op. I mean, the question is, was there anything inventive about suggesting use of this prior op extender in connection with this particular kind of controller? With this particular massager, yes. Yeah, that's the question, is whether there was something inventive about that. On this record, it's hard to know what the answer is to that. They said that there was in the patent.  In the patent, they say that there was. I don't see that. Where is the patent? Does it say there was something inventive about adding the extender to this type of controller? Well, they're saying that the seat lumbar massage feature was new. They say that in the summary of the invention. In the background art, they don't say that a seat lumbar massage function is in the prior art. They're saying that the entire- Of course it's not in the prior. They're not suggesting that. The invention is the type of controller that made the massage function work, together with pre-existing hardware, which included the extender. That's not correct. Claim one says that the invention is a modular housing, an intercept interface, a driver, and a transparency simulator. When they obtained the request, as indicated in the uncontested facts, Shukra of North America went to them and said, We have this massage lumbar already in a seat, already ride tested, already has a controller. The only thing that they're demanding of us is that you add a feature to make it transparent. Everybody knew what that meant. Everybody knew that they had to go acquire- Suppose we had a situation here in which they invent this controller, and everybody would have known. It would have been perfectly obvious to add an extender to that, because all lumbar supports hypothetically had extenders. Why would that make the person who suggested the use of an extender a co-inventor? Well, the person that suggested the use of the extender also suggested all the other options. But answer my question. Why would, under those circumstances, under that hypothetical, everybody knew that extenders were part of lumbar support. Why would somebody who suggested using an extender together with this particular type of controller be a co-inventor? Anybody would have known to do it. It's the use of the controller along with the vehicle seat and the adjustable lumbar support. But answer my hypothetical. I'm assuming that anybody in this industry, anybody of the lowest possible skill in the art, would have said, well, you've got this new controller. You're going to apply it to lumbar supports. You ought to use an extender. Anybody would have known to do that. It was perfectly conventional to do that. Why would that make that person a co-inventor? Even obvious. Well, I mean, the use of an intercept interface and a transparency simulator is obvious, too. But the bottom line is that in the patent itself, they don't say that. And in the patent itself, there's no reference that they could have said that it was prior art. It was their strategy not to say that. They don't even use the extender in the patent, right? I mean, they refer to 32 in the figures. But isn't that the only 30? No clarification whatsoever? That the second motor controls a lumbar support extender in the preferred embodiment, yes. The extender is used with the massager. You know, there's a lumbar support that integrates a massager here. If you don't integrate the massager, they would have never gotten this patent. Wait a second. Does this case need to go back for some fact-finding and ultimate determination whether adding the extender would have been obvious or was a very minor prior art addition? I don't believe so, Your Honor. The way that the patent application was written, where they are addressing the new seat lumbar feature, they're focusing on the seat lumbar feature. They're adding the lumbar support extender and the motors as their preferred embodiment. You have to understand, too, that in the course of this summary judgment motion, the inventors disavowed two of the four elements in Claim 1 as not being their contributions. So you're saying the extender is minor? No. The extender is significant based on the way that they wrote the patent application. They added it as an element. You're mentioning it once in the whole specification and then adding it to Claim 11. That means it's very significant? It was significant by the drafter of the patent application and the strategy that he followed. That's a fairly common strategy. If you invent something that's significant and then you start coming up with dependent claims of combining that inventive feature with well-known things in the prior art, it's fairly standard, isn't it? Except in the context of this. Isn't it? It is standard practice in the context of trying to define the other aspects of the claim. But in those contexts, it's naturally shown that this was prior art. Here, in this patent application, they never once said it was prior art. I thought you agreed in response to Judge Perot's question it was prior art. I agree that it does exist in the prior art, but in the context of this patent application and this prosecution... If you have a pen, a special kind of pen that you've invented, and in Claim 15 you say, and this pen can be used on lined paper, on cardboard, and on paper mache, you're saying you have to disclose in the specification or somewhere that cardboard, lined paper, and paper mache were in the prior art in order for us to not bring in the inventors of those things? Yes, if the context is you have to go one way or the other. If you're doing a patent application and you're saying that they're not in the background of the prior art, as is in here, there's no mention in here that they were in the prior art. It's a structural feature we're talking about, not a use. But in the context of a structural feature, if you're saying that that structural feature is in the prior art, say it in the patent application. Whether you say it in the patent application or not isn't the point. If it's in the prior art and it's been used for these lumbar seats, it doesn't matter that it's not mentioned in the patent application in terms of deciding whether it's significant. Well, in the Ethicon case, I disagree. I think in the Ethicon case that we relied on and that the district court judge relied on, the idea of a safety crow car was in the prior art. That one element was in two of the claims of the patent, and the judge said essentially that the Federal Circuit said that because they were in the patent, they weren't disclosed in the patent application as prior art. It was a template for the decision by the district court judge here. If you're going to say that it's in the prior art, you don't wait until the patent issues get to the court and then say, oh, it's in the prior art. They had plenty of opportunity to present it to the patent office and describe it. There are repeated references to the hardware of these things being in the prior art and the patent, both in the preferred embodied description section and in the summary of the invention. They're pretty candid about it. They say we've got a new way of controlling existing hardware to create a massage function. They talk about the electromechanical motor-driven or pneumatic seat multiple support adjustment controller systems, but they don't talk about the mechanical aspects of them, and they don't say that in the mechanical aspects of a massager system that an extender is in the prior art, and that combination is not in the prior art. You would have us affirm the dismissal, the lack of an indispensable party, namely an inventor, on the ground that the key limitation of Claim 11 was significant, was not indicated in the specification to be minor in prior art, and therefore Claim 11 doesn't have one of the inventors and owners who happens to be a defendant and dismiss. That's your view. That's correct. We're talking about a hypothetical patent application here in the sense of saying that this is in the prior art. There is no reference in the patent application that this is a piece of prior art. They could have done that. They could have mentioned that they acquired all this information from Joe Benson. They didn't do that. So, sure, if we go back, we have another ineffable conduct case on top of everything else that we can defend this case in the strategy of the whole context of this case. But I believe that the district court got it right. It got it right in the sense that they intentionally drafted this patent application in this manner, and they gave significance to these items in this manner. The fact that the judge picked the one, well, whether you go from Claim 11, 12, 14, 15, the second or the first and third elements of Claim 1, the first, second, and most of the third element of Claim 7 that the inventors all disavowed, he could have picked any one of those. Granted, he could have gone any different way, and you're looking at the Stanovo, and you could do the same thing. But the bottom line is that he picked one that was completely without question disavowed by all three inventors, corroborated and supported by Mr. Benson as the contribution to the whole invention as stated, and they worked together. They were just asked to intercept receiving inputs and send false signals as part of their activity. We provided them with all the signals. They went and connected the dots, drafted a circuit board. If anything, they did what I know he originally cited the Sewell case. They backed off from that because they did what the non-inventor did in the Sewell case. In the creation of this whole product, and they did it with a strategy that under a confidentiality agreement, they filed this patent application as a strategy to try to hold us up when we try to go to a new supplier. Mr. Sadowski, as you can see, your time has expired, and we're not going to use an extender. Thank you. Mr. Angiolari has some rebuttal time. Thank you. I think just some brief points. Mr. Sadowski's last comment about backing off on Sewell, I'm not sure where that comes from. It's cited in page six and seven of our brief on reply, and we use it to specifically rebut their appellate contention that they really invented Claim 1, which has no support in the record. The disavowal of the inventors, that's not the standard. Again, there's a lot of things that are prior art that are claimed. That doesn't mean that the inventors didn't come up with a combination. Do you think this case should go back for some fact-finding on whether this is in the prior art, whether it's in the prior art with respect to this kind of a product, whether it's an obvious extension? I think at the very least it should go back. I think that there is at least a genuine issue on this significance point, which is sort of related to the prior art point. I think it's been admitted here that it's in the prior art, so I don't know that it necessarily has to go back on that point. And because it's admitted to be prior art, I don't think it matters whether the patent itself says it's prior art. What's significant is not whether, as whatever an extender really is by itself, isolated whether it's in the prior art or whether it's in the prior art with respect to items of this sort. Items, it's clearly- Prior art, everything, most things are in the prior art. Maybe the 110th element isn't in the prior art yet. Right. But most things are in the prior art. And I think at the very least the case would have to go back to explore that point. And unless the court has any other questions, I have no further questions. Thank you.